JUNJI SUZUKI (SBN 184738)
junji@marshallsuzuki.com
MARSHALL SUZUKI LAW GROUP, LLP
230 California Street, Suite 415
San Francisco, CA 94111
Telephone: (415) 618-0090
Facsimile: (415) 618-0190
Attorney for Applicant,
John Doe

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re Ex Parte Application of<br><br>JOHN DOE,<br><br>               Applicant. | Case No: 3:23-mc-80193<br><br>**EX PARTE APPLICATION FOR ORDER PURSUANT TO 28 U.S.C. § 1782 PERMITTING DISCOVERY FOR USE IN FOREIGN PROCEEDING; SUPPORTING MEMORANDUM** |

Pursuant to 28 U.S.C. § 1782, applicant, John Doe ("**Applicant**"), an individual, hereby applies to this Court ex parte for an order permitting discovery from X Corp. operating Twitter ("Twitter") (which acquired Twitter, Inc. in 2023), for use in a court proceeding in Japan.

The proposed subpoena attached to this application seeks from X Corp. documents and information relating to a certain Twitter Accounts through which anonymous statements, under Japanese law, constitute privacy invasion.

This application is supported by the declaration of the Applicant ("**Applicant Decl.**"), the declaration of Mr. Taku Inoue ("**Inoue Decl.**"), an attorney admitted in Japan who represents Applicant in connection with an anticipated lawsuit in Japan against the person who engaged in the unlawful conduct, and the declaration of Ms. Tomomi Arauchi ("**Arauchi Decl.**"), an

**In re Ex Parte Application of John Doe**
Ex Parte Application for Order Pursuant to 28 U.S.C. § 1782 Permitting Discovery for Use in Foreign Proceeding and Supporting Memorandum

attorney admitted in Japan who provides her opinion to assist this Court in determining the scope of access logs reasonably required to identify anonymous perpetrators by using such access logs.

## I.        BACKGROUND

### A.        Subject Account on Twitter

Applicant has been operating an anonymous Twitter account under the name of 事業家 bot @Midnight_Tokyo described in **Exhibit A** attached hereto ("Entrepreneur bot @Midnight_Tokyo" in English, the "**Applicant's Account**").  Applicant helped publish (not wrote) a marketing book under the title "女子大生、オナホを売る" ("A Female College Student Sells Masturbation Device" in English. the "**Book**").  Applicant Decl. ¶ 3.

On May 7, 2023, an unknown individual/organization using the Twitter name of SUAN @suan_news described in **Exhibit B** attached hereto ("**Subject Account #1**") posted criticism about the Book and re-tweeted critical tweets by third parties about the Book.  *Id.* ¶ 4.

As discussed hereinbelow, the Subject Account #1 invaded Applicant's privacy by disclosing Twitter Direct Messages (described in section B), by disclosing the information which could be taken to be Applicant's attributes, and by enticing the identification of Applicant (described in section C).

### B.        Disclosure of Private Twitter Direct Messages

From May 7, 2023, to May 8, 2023, Applicant privately sent messages and had a conversation with Subject Account #1 via Twitter Direct Message ("**Twitter DM**") complaining about the critical tweets and re-tweets described above.  *Id.* ¶ 5.  During the same period, Applicant, Subject Account #1, and the author of the Book communicated in a group chat via Twitter DM concerning the criticism of the Book.  *Id.* ¶ 5.

On May 8, 2023, Subject Account #1 publicly posted on Twitter screenshots of a part of the private conversations via Twitter DM described above without Applicant's consent ("**Subject Post #1**"). See **Exhibits D-1, E-1, and F** attached hereto. *Id.* ¶ 7.

On the same date, Subject Account #1 posted an article ("**Article #1**") on the online news website, Suan Tokyo ("**Suan Tokyo**"), which included Subject Post #1. See **Exhibit G** attached hereto. *Id.* ¶ 10.

On May 10, 2023, Subject Account #1 publicly posted on Twitter a screenshot of another part of the private conversations via Twitter.   **Exhibit D-2, E-2, and H** attached hereto ("**Subject Post #2**," Subject Post #1, and Subject Post #2 are collectively referred to as the "**Subject Posts**") by stating "we have identified the identity of Entrepreneur bot." The Subject Post #2 was posted without Applicant's consent. *Id.* ¶ 8.

On the same day, Subject Account #1 posted an article containing Subject Post #2 on Suan Tokyo ("**Article #2**," Article #1 and Article #2 collectively refer to the "**Articles**"). See **Exhibit I** attached hereto. Article #2 had the same title of "we have identified the identity of Entrepreneur bot." in English. *Id.* ¶13.

Applicant's request to delete the Subject Posts containing the private conversations on Twitter DM has been ignored and Subject Account #1 has been disclosing them without Applicant's consent. *Id.* ¶ 9.

C.          **Disclosure of Applicant's Attributes and Enticing Identifying Applicant**

Article #1, along with the screenshots of Subject Post #1, disclosed specific private information which could be taken to be Applicant's occupation, stating that "the anonymous account that asked to delete the critical review was the manager of a listed company." *Id.* ¶ 10.

At the end of Article #1, Subject Account #1 added a link that leads readers to join an open chat group under the name スタートアップのためのオープンチャット ("Open Chat for Start-up" in English) by stating "[NEW] Open Chat for startup has been created!". *Id.* ¶ 12. Inside the chat room, an additional link leads to another open chat room under the name of 事業家 bot 避難所 ("Entrepreneur bot Shelter" in English) (the "**Chat Room**"). *Id.* ¶ 12.

Article #2 stated that "'Entrepreneur bot' is an anonymous account that has been communicating with SUAN seeking to delete critical reviews in an intimidating manner. It further stated that it has been discovered that the operator of the account is 'the manager and the largest shareholder' of the listed company." *Id.* ¶ 13. Also, at the end of Article #2, a link was included to an open chat room, which led readers to the Chat Room by stating "[NEW] Open Chat for startup has been created!" *Id.* ¶ 14.

The Chat Room named after "Entrepreneur bot Shelter." was created in or about May 2023. *Id.* ¶ 15. More than 1,000 people joined the Chat Room and the participants tried to identify the operator of the Applicant's Account on Twitter. *Id.* ¶ 15. See **Exhibit J** attached hereto. The participants not only posted jokes about the Applicant but also shared the information which could be taken to be Applicant's real name and the Applicant's personal information such as occupation inside the Chat Room. The operator of the Subject Accounts intentionally enticed Twitter users and readers of the articles on Suan Tokyo to come into the Chat Room and to identify an operator of Applicant Account. Although the operator knew what was happening in the Chat Room, it continues to allow the Chat Room to remain as it was. *Id.* ¶ 15.

**D.      The Conduct of Subject Accounts Operator Constitutes Privacy Invasion Under Japanese Civil Code**

By posting the Subject Posts and the Articles containing the private conversation on Twitter DM and information about the Applicant's attributes as discussed in section B above, the operator of the Subject Account #1 disclosed what Applicant had not expected and intended to disclose publicly. *Id.* ¶9.

By posting the Subject Posts and the Articles enticing Twitter users and readers of the Articles to join the Chat Room and to identify the operator of Applicant's Account as discussed in section C above, the information which could be taken to be Applicant's real name and Applicant's attributes were revealed publicly. Applicant had not expected and intended that such kinds of information were disclosed. *Id.* ¶¶ 11, 16.

The subject disclosed information, that is, several private conversations on Twitter DM and the information which could be taken to be a person's real name and other personal attributes, are what an ordinary person does not want to disclose especially when the person is anonymously acting on a social networking service. *Id.* ¶¶ 9, 11, 16.

According to Taku Inoue, Applicant's Japanese attorney, the conducts of Subject Account#1 constituted privacy invasion under Japanese Civil Code[1] Articles 709 and 710. Inoue Decl. ¶¶ 11-14.

Thus, Applicant intends to bring a lawsuit in Japan against the person(s) associated with the Subject Accounts as soon as the person(s)' identities have been ascertained through the discovery sought by this application. *Id.* ¶1.

---

[1] https://elaws.e-gov.go.jp/document?lawid=129AC0000000089;
https://www.japaneselawtranslation.go.jp/ja/laws/view/4314.

**In re Ex Parte Application of John Doe**
Ex Parte Application for Order Pursuant to 28 U.S.C. § 1782 Permitting Discovery for Use in Foreign Proceeding and Supporting Memorandum

In order to identify the person(s) who committed unlawful acts against Applicant through the Subject Accounts, it is crucial for Applicant to obtain the information relating to the Subject Accounts. *Id*. ¶17.

Not to mention, this Application does not mean Applicant admits the descriptions in the Subject Posts and the Articles are true and correct. Applicant Decl. ¶17.

### E.        Relevant Twitter Account

A Twitter account under the name of Black Suan @suan_team described in **Exhibit C-1** attached hereto ("**Subject Account #2**," the Subject Account #1 and the Subject Account #2 are hereinafter collectively referred to as the "**Subject Accounts**") seems to be operated by the same individual/organization using the Subject Account #1. Applicant Decl. ¶ 6.

The Subject Accounts were created in May 2023.  They operated the same online news website (Suan Tokyo) and have the same link to Suan Tokyo on their bio-data page on Twitter. See **Exhibit C-1** attached hereto. *Id.* ¶ 6.

Subject Account #2 tweeted "This is Suan's special investigation team.  We will update the information related to Entrepreneur bot (Midnight_Tokyo) here."  Subject Account #2 seems to have been created and operated with the intention of posting tweets about Applicant's Account and to identify Applicant.  See **Exhibit C-2** attached hereto. *Id*. ¶ 6.

### II.        ARGUMENT

### A.        Legal Standard

An applicant seeking discovery for use in a foreign proceeding must demonstrate that (1) the person from whom the discovery is sought resides or is found in this district, (2) the discovery is for use in a proceeding before a foreign tribunal, and (3) the application is made by

**In re Ex Parte Application of John Doe**
Ex Parte Application for Order Pursuant to 28 U.S.C. § 1782 Permitting Discovery for Use in Foreign Proceeding and Supporting Memorandum

a foreign or internal tribunal or any interested person.  28 U.S.C. § 1782; *In re The Republic of Ecuador*, Case No. C-10-80225 MISC CRB (EMC), 2010 U.S. Dist. LEXIS 102158 (N.D. Cal. Sept. 15, 2010) at*1.

In exercising its discretion under 28 U.S.C. § 1782, a district court should further consider the following non-exhaustive factors: (1) whether the "person from whom discovery is sought is a participant in the foreign proceeding"; (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of  the foreign government or the court or agency abroad to U.S. federal-court judicial assistance"; (3) whether the discovery request is an "attempt to circumvent proof-gathering restrictions or other policies of a foreign country or the United States"; and (4) whether the discovery requested is "unduly intrusive or burdensome."  *In re Apple Inc.*, 2012 U.S. Dist. LEXIS 66669, 3-4 (N.D. Cal. May 2, 2012) (quoting *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264-265 (U.S. 2004)).

### B.    Applicant's Application Meets All Statutory Requirements under 28 U.S.C. § 1782.

#### 1.    X Corp. From Whom Discovery Is Sought Is Located in This District.

X Corp. operating Twitter, from whom the discovery requested in this application is sought, is located at 1355 Market Street, San Francisco, CA 94103, United States[2]. Therefore, X Corp. is within this Court's district.

#### 2.    The Requested Discovery Is for Use in a Proceeding in Japan.

The discovery requested in this application must be used in a proceeding before a foreign tribunal.  The foreign proceeding needs not be underway before 28 USC § 1782 may be invoked. It is enough that such proceedings are "likely to occur" or are "within reasonable

---

[2]   https://twitter.com/en/tos

**In re Ex Parte Application of John Doe**
Ex Parte Application for Order Pursuant to 28 U.S.C. § 1782 Permitting Discovery for Use in Foreign Proceeding and Supporting Memorandum

contemplation." *Intel Corp. v. Advanced Micro Devices, Inc., supra,* at 258-259 (quoting *In re Letter Request From Crown Prosecution Service of United Kingdom*, 870 F.2d 686, 691 (DC Cir. 1989)).

Applicant intends to bring a lawsuit in Japan against the person(s) associated with the Subject Accounts as soon as the person(s)' identities have been ascertained through the discovery sought by this application.  According to Mr. Inoue's opinion, bringing the lawsuit is based on appropriate legal theory and Applicant has a good chance to prevail in the case. Inoue Decl. ¶¶ 12-15.  Thus, the requirement that the discovery be for use in a foreign proceeding is met.

**3.   Applicant is Interested Party under 28 U.S.C. § 1782, Who May Make This Application.**

The application to seek discovery pursuant to 28 U.S.C. § 1782 may be made by "any interested person."  As a prospective plaintiff in the anticipated litigation in Japan, Applicant is clearly an interested person under 28 U.S.C. § 1782.

**C.   Applicant's Application Further Meets All of the Discretionary Factors under *Intel*.**

**1.   X Corp. Is Not a Participant in the Foreign Proceeding.**

The first factor under *Intel* case asks whether the "person from whom discovery sought is a participant in the foreign proceeding." *Intel*, 542 U.S. at 264.  If the person is a participant, "the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad" because "[a] foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence." *Id*. "In contrast, nonparticipants in the foreign proceeding may be outside the foreign tribunal's

**In re Ex Parte Application of John Doe**
Ex Parte Application for Order Pursuant to 28 U.S.C. § 1782 Permitting Discovery for Use in Foreign Proceeding and Supporting Memorandum

1  jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable

2  absent § 1782(a) aid." *Id*.

3      X Corp. is a nonparticipant in the prospective Japanese lawsuit.  Inoue Decl. ¶20.

4  Additionally, the documents that Applicant seeks are located in the United States and not in

5  Japan.  Thus, they are out of reach of the Japanese court's jurisdiction absent § 1782(a) aid.

6

7  **2.    The Requested Information Is Crucial to Applicant's Bringing Lawsuit in**

8  **Japan and the Japanese Courts Would Be Receptive to this Court's Assistance.**

9      "A court presented with a § 1782(a) request may take into account the nature of the

10  foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the

11  foreign government or the court or agency abroad to U.S. federal-court judicial assistance."

12  *Intel*. 264.

13

14      In order to identify the person who committed unlawful acts against Applicant through

15  the Subject Accounts in question for purposes of bringing a lawsuit in Japanese court, it is crucial

16  for Applicant to obtain the information relevant to the Subject Accounts.  Inoue Decl.  ¶ 17.

17  Japanese law does not allow "John Doe" defendants in civil litigation, and a plaintiff must state

18  the names and physical addresses of all parties in the complaint.  Article 2 (1) of Rules of Civil

19  Procedure (Rules of the Supreme Court of Japan No. 5 of 1996).  *Id.* ¶ 17.  Hence, without first

20  obtaining the information about the Subject Accounts, Applicant may not even start litigation in

21  Japan.  *Id.* ¶ 17.

22

23      Here, Applicant does not have any information to identify the person(s) who committed

24  the alleged unlawful acts against Applicant using the Subject Accounts; hence, it is crucial for

25  Applicant to obtain information regarding who is operating the Subject Accounts.  Also, there

26  is no means to identify an operator of the Subject Accounts through the online news web site

27  under the name of Suan Tokyo.  *Id.* ¶ 17.

28

**In re Ex Parte Application of John Doe**
Ex Parte Application for Order Pursuant to 28 U.S.C. § 1782 Permitting Discovery for Use in Foreign Proceeding
and Supporting Memorandum

In addition, the Japanese court will be receptive to the Court's assistance under § 1782. In fact, the Japanese courts have been receptive to discovery assistance from the U.S. courts. *Marubeni Am. Corp. v. LBA Y.K.*, 335 Fed. Appx. 95, 97-98, 2009 U.S. App. LEXIS 12953, at *7-8 (2d Cir. N.Y. 2009); *In re Application of LG Elecs. Deutschland GMBH*, 2012 U.S. Dist. LEXIS 70570, at *5, 2012 WL 1836283, at*2 (S.D. Cal. May 21, 2012).

### 3.   Applicant's Discovery Request Is Not an Attempt to Circumvent Foreign Proof Restrictions or Policies.

"A district court could consider whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Intel*, 542 U.S. at 265.

 Applicant is not aware of any restrictions imposed by, or any policies under, Japanese law limiting the proof-gathering proceeding in the manner proposed and for the purposes stated herein.   Inoue Decl. ¶ 21.   Thus, Applicant is not attempting to circumvent restrictions or policies.   In the past, courts have granted 28 U.S.C. § 1782 applications for use in Japanese proceedings, both civil and criminal.   *Marubeni Am. Corp.*, 335 Fed. Appx. at 98; *LG Elecs. Deutschland GMBH*, 2012 U.S. Dist. LEXIS 70570, at *5, 2012 WL 1836283, at*2; *Okubo v. Reynolds (In re Letters Rogatory from the Tokyo Dist. Prosecutor's Office)*, 16 F.3d 1016, 1018-1019 (9th Cir. Cal. 1994).

### 4.   Applicant's Request Is Narrowly Tailored to Highly Relevant Information and Not Unduly Intrusive or Burdensome.

"Unduly intrusive or burdensome requests may be rejected or trimmed." *Intel*, 542 U.S. at 265.

As shown in the proposed subpoena to X Corp. attached to the proposed order submitted with this application, the discovery requested by Applicant is narrowly tailored and limited to

**In re Ex Parte Application of John Doe**
Ex Parte Application for Order Pursuant to 28 U.S.C. § 1782 Permitting Discovery for Use in Foreign Proceeding and Supporting Memorandum

discovery materials related to the Subject Account through which the identity of defendant(s) to the anticipated Japanese lawsuit could be ascertained and nothing further.

First, the proposed subpoena does not seek disclosure of the content of any communications associated with the Subject Accounts.  *Optiver Australia Pty. Ltd. & Anor. v. Tibra Trading Pty. Ltd. & Ors.*, No. C 12-80242 EJD PSG, 2013 WL 256771, at *2 (N.D. Cal. Jan. 23, 2013) (discussing prohibitions of Stored Communications Act, 18 U.S.C. § 2701 et seq).

Second, the proposed subpoena seeks disclosure of the name and address of the person(s) whose credit card is associated with the Subject Accounts, not of credit card numbers or any other sensitive information.  *In re Med. Corp. H&S*, No. 19-MC-80058-VKD, 2019 WL 1230440, at *4, 2019 U.S. Dist. LEXIS 42926, at *9 (N.D. Cal. Mar. 15, 2019) (admitted that applicant seeks disclosure of name and address of credit card holder registered on Google Account).

Third, however, it is highly unlikely that the perpetrators have provided their true name and address to X Corp.  Thus, the names and addresses X Corp. may have on file in connection with the Subject Accounts have a high probability of being fictitious and would not help Applicant identify the perpetrators.  In such case, access logs are the only available information that could identify the perpetrators.  Arauchi Decl. ¶ 8.  *In re Kiki. Co., Ltd.*, (N.D. Cal. February 25, 2019, No. 19-mc-80048-NC);  *In re Med. Corp. H&S*, 2019 WL 1230440, 2019 U.S. Dist. LEXIS 42926; *In re Med. Corp. H&S*, No. 19-MC-80107-SVK, 2019 WL 2299953, 2019 U.S. Dist. LEXIS 90977 (N.D. Cal. May 30, 2019); *M&S LLC v. M&S LLC*, No. 19-MC-80168-DMR, 2019 WL 3891497, 2019 U.S. Dist. LEXIS 140311 (N.D. Cal. Aug. 19, 2019); *In re Med. Corp. H&S*, No. 19-MC-80186-VKD, 2019 WL 3945003, 2019 U.S. Dist. LEXIS 142289 (N.D. Cal. Aug. 21, 2019); *In re Med. Inc. Ass'n Smile Create*, No. 19-MC-80230-VKD, 2019 WL

**In re Ex Parte Application of John Doe**
Ex Parte Application for Order Pursuant to 28 U.S.C. § 1782 Permitting Discovery for Use in Foreign Proceeding and Supporting Memorandum

4933582, 2019 U.S. Dist. LEXIS 173999 (N.D. Cal. Oct. 7, 2019) (all orders above allowed applicant to seek disclosure of access logs.).

Discovery of access logs at posting and access logs for login just before posting should be allowed because there is a possibility that such access logs remain available and have not yet been deleted.  However, these access logs alone might be incomplete or insufficient to identify the perpetrator(s) because X Corp. often records only timestamps (not IP addresses) at the time of each posting.  In addition, if the perpetrator(s) used special tools for anonymization such as Tor (The Onion Router), the access log at the time of posting would not be sufficient to identify the perpetrator(s).  Inoue Decl. ¶¶ 16-17; Arauchi Decl. ¶¶ 7-8.

From X Corp.'s perspective, it is neither unduly intrusive nor burdensome to disclose *all* access logs, in lieu of the log at the time of posting.  Providers such as X Corp. routinely delete old access logs and keep only fresh access logs for the most recent several months. Arauchi Decl. ¶ 8.  In fact, it is more burdensome for X Corp. to search for and pick up a particular and specific access log containing all the information necessary to identify the perpetrator(s).  *Id.* ¶ 8.

Furthermore, access logs themselves contain no substantial private information regarding the Subject Accounts.  Access logs only disclose timestamps showing when the Subject Account was accessed and IP addresses.  *Id.* ¶ 8.  Any other substantial private information (e.g. information about what websites the holders may have accessed, what action they took on the website, etc.) is not disclosed.  *Id.* ¶ 8.

In conclusion, Applicant's request is narrowly tailored to highly relevant information and not unduly intrusive or burdensome.

//

//

**In re Ex Parte Application of John Doe**
Ex Parte Application for Order Pursuant to 28 U.S.C. § 1782 Permitting Discovery for Use in Foreign Proceeding and Supporting Memorandum

1

2   **III.     CONCLUSION**

3          For the reasons stated above, Applicant respectfully requests that this Court grant the

4   application and permit to issue the subpoena to X Corp. attached to the proposed order

5   submitted with this application.

6

7

8

9

10

11  Dated:  July 20, 2023                    Respectfully submitted,

12

13

14                                           MARSHALL SUZUKI LAW GROUP, LLP

15

16

17                                           By:

18                                                Junji Suzuki
                                                 Attorney for Applicant,
19                                               John Doe

20

21

22

23

24

25

26

27

28

**In re Ex Parte Application of John Doe**
Ex Parte Application for Order Pursuant to 28 U.S.C. § 1782 Permitting Discovery for Use in Foreign Proceeding
and Supporting Memorandum