JUNJI SUZUKI (SBN 184738)
junji@marshallsuzuki.com
MARSHALL SUZUKI LAW GROUP, LLP
230 California Street, Suite 415
San Francisco, CA 94111
Telephone: (415) 618-0090
Facsimile: (415) 618-0190
Attorney for Applicant,
John Doe

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| In re Ex Parte Application of<br><br>John Doe,<br><br>              Applicant.<br><br>_____ | Case No: 3:23-mc-80193<br><br>**DECLARATION OF TAKU INOUE IN SUPPORT OF EX PARTE APPLICATION FOR ORDER PURSUANT TO 28 U.S.C. § 1782 PERMITTING DISCOVERY FOR USE IN FOREIGN PROCEEDING** |

I, Taku Inoue, declare as follows:

1. I am an attorney duly licensed to practice law in Japan. I am a partner at Hibiya Park Law Offices, a legal professional corporation organized and existing under the laws of Japan. Applicant, John Doe ("Applicant"), retained me and my law firm to initiate a civil lawsuit against those liable for invasion of privacy under Japanese law as soon as their identities have been ascertained through discovery.

2. I have personal knowledge of each matter stated herein.

3. I submit this declaration in support of Applicant's Ex Parte Application for Order Pursuant to 28 U.S.C. § 1782 (the "Application").

4. Applicant has been operating an anonymous Twitter account under the name of 事業家 bot @Midnight_Tokyo ("Entrepreneur bot" in English)

5. On May 8, 2023, and May 10, 2023, a Twitter Account whose display name was SUAN @suan_news ("Subject Account #1") disclosed Applicant's several private conversations with it via Twitter Direct Messages by posting tweets ("Subject Posts"). The disclosure was made without the Applicant's consent.

6. Also, the May 10, 2023 post stated "We have identified the identity of Entrepreneur bot. He was a manager and the largest shareholder of a listed company."

7. On May 8, 2023, and May 10, 2023, the Subject Account #1 posted articles on its online website (the "Articles").

8. The Articles disclosed the information which could be taken to be Applicant's attributes by stating "The anonymous account that had asked me in a threatening manner to delete the critical review was a manager of a listed company [,]" and "The anonymous account named 'Entrepreneur bot' which had been communicating in an intimidating manner with Suan to delete critical reviews. It turned out that the owner of this account is 'a manager and the largest shareholder' of a listed company."

9. Also, at the end of each Article, there was a link leading to an open chat room under the title of "事業家 bot 避難所" ("Entrepreneur bot shelter" in English) with a statement "[NEW] The open chat room for start-ups has been created!" In the chat room, more than 1,000 participants tried to identify the operator of Applicant's private Twitter Account and shared the information which could be taken to be Applicant's true name and Applicant's attributes.

10. Subject Account #1 intentionally enticed Twitter users and readers of the Articles to come into the chat room and to identify the operator of Applicant's Twitter account. Although the operator of Subject Account #1 knew what was happening in the chat room, it continues to allow the chatroom to remain as it was.

11. Based on my investigation into this matter, Subject Account #1's conduct (postings of the tweets and the articles) constitutes invasion of privacy, a tort under Japanese tort law.

12. Japanese tort law protects a person's right not to have their private life unnecessarily disclosed. If one's privacy is invaded, that person can claim damages arising from the disclosure against the wrongdoer under Japanese Civil Code[1] Article 709 and 710.

13. In the case of disclosure of a private conversation on the message application, disclosure of the content of a message constitutes an invasion of privacy if the disclosed conversation is (1) what the owner of the information had not expected and intended to be disclosed, and (2) what an ordinary person does not want to disclose. Here, as to the subject conversation on Twitter Direct Massage, Applicant had never expected and intended to disclose the conversation. Also, Twitter Direct Message is a private communicating system not designed to be disclosed to third parties. An ordinary person does not want to disclose the conversation. Thus, the disclosure of Applicant's conversation can constitute privacy invasion under Japanese tort law.

14. In the case of the disclosure of information which could be taken to be a person's real name and attributes such as that person's specific occupation, which can result in identification, the Courts in Japan have held disclosure of such information to be an invasion of privacy, particularly serious when the information owner is using an

---

[1] https://elaws.e-gov.go.jp/document?lawid=129AC0000000089;
https://www.japaneselawtranslation.go.jp/ja/laws/view/4314.

anonymous social media account. Here, Applicant acted within an anonymous Twitter account. Subject Account #1 disclosed the information which could be taken to be Applicant's specific occupation in the posts on Twitter and in the above-referenced articles, and enticed Twitter users and readers of the articles to join the chat room and to identify the operator of Applicant's Twitter account. Therefore, Subject Account #1's conduct, which resulted in disclosure of the information which could be taken to be Applicant's real name and Applicant's attributes can constitute privacy invasion under Japanese tort law.

15. Based on my investigation into this matter, bringing the lawsuit is based on appropriate legal theory and Applicant has a good chance to prevail in the case.

16. There is another twitter account, whose name is Black Suan @suan_team ("Subject Account #2", Subject Account #1 and Subject Account #2 are collectively referred to "Subject Accounts"). Subject Account #2 seems to have been created to tweet especially about Applicant's Twitter account and to encourage identification of the operator of Applicant's account from the content of its tweets. The account has a link on its bio-data page to the online news website operated by Subject Account #1. Thus, the operator of Subject Account #2 seems to be the same as that operating Subject Account #2. Therefore, we also need to ascertain Subject Account #2's identification.

17. In order to identify the person(s) who committed unlawful acts against Applicant through the Subject Accounts, it is crucial for Applicant to obtain the information relevant thereto.  In particular, the information relating to the Subject Accounts, as specified in the proposed subpoena concurrently filed with the Application, would be critical and highly relevant in identifying the perpetrators.  Japanese law does not allow "John Doe defendants" in civil litigation, and a plaintiff must state the names and physical addresses of all parties

in the complaint. Article 2 (1) of Rules of Civil Procedure[2] (Rules of the Supreme Court of Japan No. 5 of 1996). Also, there is no means to identify an operator of Subject Accounts through the online news website, Suan Tokyo. Therefore, without first obtaining the information about the Subject Accounts, Applicant may not even start litigation.

18. Obviously, access logs at the time when the Subject Reviews were posted and the access log for each login are highly relevant and necessary, but some or all of them may be unavailable because records of older access events are generally erased after a short period of time (usually 3 to 6 months), in which case subsequent access logs after the Subject Reviews were posted will become highly relevant and necessary for Applicant. At the same time, it is impossible to identify a single access log from which all the information needed by the victim can be extracted because of the existence of special tools for anonymization, such as Tor (The Onion Router) or Proxy. As to the completeness of a particular log, it is unclear how the provider maintains access logs.

19. Therefore, all access logs, including the most recent logs, need to be disclosed as long as they are presumed to be those of the same perpetrator. For example, access logs identifying the same Twitter account as the perpetrator are presumed to belong to the perpetrator.

20. The Subject Accounts are maintained by X Corp. (which acquired Twitter, Inc.), located in San Francisco, California. X Corp. will not be a party to the anticipated Japanese lawsuit described above.

---

[2] https://elaws.e-gov.go.jp/document?lawid=408AC0000000109;
https://www.japaneselawtranslation.go.jp/ja/laws/view/2834

21. I am not aware of any restrictions imposed by or any policies under Japanese limiting the proof-gathering proceeding in the manner proposed and for the purposes stated herein and in the Application.

22. Based on the above, the documents sought from X Corp. are highly relevant to Applicant's anticipated Japanese lawsuit and are narrowly tailored and limited to the discovery materials related to the Subject Accounts through which the identities of the defendants to the anticipated Japanese lawsuit could be ascertained and nothing further.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated: July 7, 2023          By: _____
                                 Taku Inoue